# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# TERRE HAUTE DIVISION

| | |
|---|---|
| TYRICE HALLIBURTON,<br><br>        Petitioner,<br><br>  vs.<br><br>SUPERINTENDENT,<br><br>        Respondent. | No. 2:17-cv-115-LJM-MJD |

### Entry Discussing Petition for a Writ of Habeas Corpus
### and Denying Certificate of Appealability

An Indiana jury found Tyrice Halliburton guilty of murder. Halliburton now challenges that conviction, seeking a writ of habeas corpus. For the reasons explained in this Entry, Halliburton's petition for a writ of habeas corpus must be denied and the action dismissed with prejudice. In addition, the Court finds that a certificate of appealability should not issue.

### I. The Habeas Petition

#### A. Background

The circumstances associated with Halliburton's offense and aspects of the prosecution were reviewed in his direct appeal:

> On March 18, 2008, responding to a 911 call, police discovered the lifeless body of Sheena Kiska in her apartment in Bristol, Indiana. The base of her skull was fractured, a stab wound of great force had gone through a rib and organs, and a knife wound had severed her carotid artery as well as the jugular veins on both sides of her neck. In all, Kiska had received more than fifty stab wounds. Multiple

bloody knives were found in the apartment, and blood splatters, smears, and droplets were abundant in the apartment. Two days later officers returned to the apartment to conduct further investigation but were unable to gain entry because other officers had changed the lock on the door for security reasons. Halliburton, who lived in the apartment next door, observed the officers having difficulty entering Kiska's residence and retrieved a tool from his own apartment that appeared to be "a little screwdriver that kind of ha[d] a bend on the top of it." Tr. at 225. With the officers' permission, Halliburton used the screwdriver to unlock the door in a manner the officers "had never seen" before. Tr. at 225.

Halliburton was interviewed by the police three different times in the days following Kiska's death. During the first and second interviews, Halliburton stated that he left for a veterinary appointment at 1:15 the afternoon of the killing but claimed to have seen Kiska and her daughter standing outside by a white truck when he left. During the third interview, Halliburton initially began by reiterating his prior story but then offered a different account of what he had seen that day. During this interview, Halliburton claimed that he saw another resident in the hallway exiting Kiska's apartment as he was leaving for the veterinarian. He further declared that he heard noises coming from Kiska's apartment at which point he "propped the door just a little bit," Tr. at 420, and "saw [the resident] in there cutting her up." Tr. at 421. Halliburton described the layout of Kiska's apartment and was "[v]ery detailed" about where the furniture was located and where the attack occurred. Tr. at 426. He identified the exact locations of where she had been stabbed and said that Kiska's face looked like "a piece of meat." Tr. at 429. Halliburton also said that Kiska had been attacked because "she came in at the wrong time." Tr. at 431. After the interview, the investigating officer tried to confirm Halliburton's claim with respect to where he said he had been standing when he peered through Kiska's door and purportedly witnessed the attack. However, the officer determined that it would have been physically impossible for Halliburton to have seen the attack from a crack in the door; instead he had to have been at least "two to three feet" inside the apartment. Tr. at 433. Around this same time officers recovered from Halliburton's car a DVD player that had been taken from Kiska's apartment about a month earlier.

The investigation continued, and in August 2010, Halliburton sent a letter to the police saying, "I want to clear [the resident's] name. I didn't really see him doing it." Tr. at 433–34. In January 2011, the State charged Halliburton with murder. Alleging he committed the murder by intentionally killing the victim while committing or attempting to commit burglary—pursuant to Indiana Code section 35–50–2–9(b)(1)(B)—the State filed an amended information in January 2012 seeking life imprisonment without parole. The State also charged Halliburton as a habitual offender.

Trial began April 16, 2012. During the guilt phase, testimony largely from State's witness Nicole DeFronzo revealed that in early 2008 she and her then-boyfriend Halliburton lived together in an apartment next door to Kiska. On March 18, 2008, Halliburton took his cat to a veterinary appointment where he had arranged to meet DeFronzo. Halliburton told DeFronzo that he had entered Kiska's apartment when she was not there. However, Kiska came home unexpectedly, and a struggle ensued resulting in her brutal death. More precisely, according to DeFronzo, Halliburton told her that when Kiska came home, "he didn't want to get caught so he killed her." Tr. at 523. Halliburton left Kiska's apartment and changed his bloody clothes. DeFronzo helped dispose of the clothes and they drove to the home of DeFronzo's mother, a registered nurse, who bandaged a wound on Halliburton's hand. For over three years DeFronzo did not reveal to anyone what Halliburton had told her about Kiska's death. Nor had she revealed her own complicity in helping get rid of evidence.

During trial the State introduced numerous exhibits including photographs of the crime scene, pre and post autopsy photographs, and a rib bone of the victim that had been removed during autopsy. The State also introduced evidence that Halliburton had committed a burglary of Kiska's apartment approximately a month prior to the killing; and for which the trial court gave a limiting instruction. Further the State called DeFronzo's mother as a witness who testified, among other things, that she had counseled her daughter to come forward with what she knew and "to tell the truth." Tr. at 484.

The jury found Halliburton guilty of murder as charged. At the penalty phase of trial, the jury recommended life imprisonment without parole. And thereafter Halliburton admitted to being a habitual offender. Following a sentencing hearing the trial court sentenced Halliburton consistent with the jury's recommendation.

*Halliburton v. State,* 1 N.E.3d 670, 673–75 (Ind. 2013) (footnote omitted). After this direct appeal, the denial of Halliburton's petition for post-conviction relief was affirmed in *Halliburton v. State*, 65 N.E.3d 644 (Ind.Ct.App. 2016), *transfer denied,* 76 N.E.3d 142 (Ind. 2017).

This action followed. Halliburton's habeas claims are that:

(1)    his trial counsel was ineffective for failing to investigate mitigating evidence;

(2)    his trial counsel was ineffective for failing to "bring [him] a plea to [sign]";

(3) the trial court committed fundamental error by admitting autopsy photographs and a portion of the victim's rib bone;

(4) the trial court improperly admitted evidence that Halliburton previously committed burglary and gave an improper limiting instruction; and

(5) the trial court committed fundamental error by allowing vouching testimony.

**B. Applicable Law**

"[I]n all habeas corpus proceedings under 28 U.S.C. § 2254, the successful petitioner must demonstrate that he 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Brown v. Watters,* 599 F.3d 602, 611 (7th Cir. 2010) (quoting 28 U.S.C. § 2254(a)). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214, became effective on April 24, 1996, and governs the habeas petition in this case because Halliburton filed his petition after the AEDPA's effective date. *See Lindh v. Murphy,* 521 U.S. 320, 336 (1997).

"As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(a)). "Recognizing that state courts are no less experienced than federal courts in dealing with claims of ineffective assistance of counsel, federal law erects a high deferential standard . . . for claims that a state court erred." *Bailey v. Lemke*, 735 F.3d 945, 949 (7th Cir. 2013) (citing *Burt v. Titlow,* 134 S. Ct. 10, 15–16 (2013)). *See also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

"Under the current regime governing federal habeas corpus for state prison inmates, the

inmate must show, so far as bears on this case, that the state court which convicted him unreasonably applied a federal doctrine declared by the United States Supreme Court." *Redmond v. Kingston,* 240 F.3d 590 (7th Cir. 2001) (citing 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362 (2000); *Morgan v. Krenke*, 232 F.3d 562 (7th Cir. 2000)).[1] An "unreasonable" application of federal law is one "'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Harper v. Brown*, No. 15-2276, 2017 WL 3224907, at *2 (7th Cir. July 31, 2017) (quoting *Ward v. Neal*, 835 F.3d 698, 703 (7th Cir. 2016) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011))). "A state-court decision involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner." *Brown v. Payton*, 544 U.S. 131, 141 (2005) (internal citations omitted). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes*, 380 F.3d 1034, 1043 (7th Cir. 2004) (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)). In short, the standard of § 2254(d) is "difficult to meet . . . because it was meant to be." *Burt v. Titlow,* 134 S. Ct. 10, 16 (2013) (internal quotation marks omitted).

---

[1] "In § 2254 proceedings, federal courts are foreclosed from fact-finding. We therefore defer to the findings of the [state] court, which have not been challenged and are presumed to be correct unless rebutted by clear and convincing evidence." *Jones v. Butler,* 778 F.3d 575, 578 (7th Cir. 2015) (citing 28 U.S.C. § 2254(e)(1); *Harris v. Thompson,* 698 F.3d 609, 613 (7th Cir. 2012)). A state court's factual finding is unreasonable only if it "ignores the clear and convincing weight of the evidence." *Taylor v. Grounds,* 721 F.3d 809, 817 (7th Cir. 2013) (internal quotation marks and citations omitted). No showing of such a nature has been made here.

In addition to the foregoing substantive standard, "federal courts will not review a habeas petition unless the prisoner has fairly presented his claims 'throughout at least one complete round of state-court review, whether on direct appeal of his conviction or in post-conviction proceedings.'" *Johnson v. Foster*, 786 F.3d 501, 504 (7th Cir. 2015) (quoting *Richardson v. Lemke*, 745 F.3d 258, 268 (7th Cir. 2014); citing 28 U.S.C. § 2254(b)(1)). A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell,* 547 U.S. 518, 536 (2006); *Coleman v. Thompson,* 501 U.S. 722, 750 (1991).

### C. Discussion

Halliburton's first two claims are asserted failings of his trial attorney, these being his attorney's alleged failure to investigate mitigating evidence and his attorney's failure to "bring [Halliburton] a plea to [sign]." *Strickland v. Washington,* 466 U.S. 668, 684 (1984), supplies the clearly established Federal law, as determined by the Supreme Court of the United States that governs a claim of ineffective assistance of counsel.

> *Strickland* recognized that the Sixth Amendment's guarantee that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence" entails that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence. *Id.,* at 685–687. "Under *Strickland,* we first determine whether counsel's representation 'fell below an objective standard of reasonableness.' Then we ask whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Padilla v. Kentucky,* 559 U.S. 356, 366 (2010) (quoting *Strickland, supra,* at 688, 694).

*Hinton v. Alabama,* 134 S. Ct. 1081, 1087-88 (2014) (parallel citations omitted). The Supreme Court framed the determinative question as "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686. "A convicted defendant challenging counsel's effectiveness must satisfy both prongs of the well-known *Strickland* test: he must show that his attorney's representation was objectively deficient, and he must show that he was prejudiced by the substandard performance." *Bynum v. Lemmon*, 560 F.3d 678, 684 (7th Cir. 2009) (citing cases). Under AEDPA, moreover, this Court must give "double deference" to the state court's ruling on ineffective assistance of counsel claims because habeas review under AEDPA requires a habeas court to give the state court and the defense attorney the benefit of the doubt. *See Woods v. Donald,* 135 S. Ct. 1372, 1376 (2015).

The Indiana Court of Appeals recognized that *Strickland* provides the controlling law. *Halliburton v. State*, 65 N.E.3d 644, at *9 (Ind. Ct. App. 2016). It then examined the specification of ineffective assistance of counsel and explained why the first of these claims was without merit:

> In considering the reasonableness of trial counsel's investigation and the quantum of evidence known to counsel, we observe that Attorney Williams testified that Zeitler, the mitigation expert, did a "very, very good job of finding school records, health records," and matters that would pertain to Halliburton's past including records from Oaklawn. Post–Conviction Transcript at 8. Attorney Johnson testified that they requested and received voluminous records from Halliburton's past, that he spent hours at the jail interviewing Halliburton, and that they also met with his family. At trial, Attorney Williams referred to the records, and the court commented that the stack of materials was about ten inches tall. As to whether the known evidence would lead a reasonable attorney to investigate further, Attorney Williams indicated that he did not see the need for a mental health professional and that Halliburton was competent, amenable, always good to work with, a very engaged participant, and someone who seemed to be in complete control of his faculties. Under the circumstances, we cannot say that the performance of Halliburton's trial counsel was deficient.

> In addition, we cannot say that Halliburton demonstrated that the result of the proceeding would have been different had his trial counsel hired a mental health expert. Dr. Bubp indicated that Halliburton displayed a mild rage control issue, that he is much more likely to make judgments for himself and much more self-centered than most without the ability to fully see how consequences fall on others, and that he is more prone to criminal behavior given the challenges with his frontal lobe processes. Attorney Williams testified that evidence that Halliburton had some type of an injury that caused him disconnect or a challenge with his mental processes such that he might have trouble with impulse control, or rage would be a double-edged sword and that if one injects fear then a jury would err on the side of caution and lock someone up as long as they can. We cannot say that Dr. Bubp's testimony undermines confidence in the outcome or that Halliburton has demonstrated that he was prejudiced.

*Id.* at *9-10 (footnotes omitted).

This was a reasonable application of the federal *Strickland* standard. Because it was a reasonable application of the controlling federal standard, "[u]nder AEDPA . . . it cannot be disturbed." *Hardy v. Cross,* 132 S. Ct. 490, 495 (2011).

Halliburton's second ineffective assistance of counsel claim is that his attorney was ineffective for failing to "bring [him] a plea to [sign]." This claim was never presented to the Indiana state courts.

"[T]he burden is on the petitioner to raise his federal claim in the state court at a time when state procedural law permits its consideration on the merits. . . ." *Bell v. Cone,* 543 U.S. 447, 451 n.3 (2005). Thus, "[a] federal claim that was not raised in the state courts is procedurally barred and must be dismissed." *Henderson v. Cohn*, 919 F.2d 1270, 1272 (7th Cir. 1990) (citing *United States ex rel. Simmons v. Gramley,* 915 F.2d 1128, 1132 (7th Cir. 1990)). *See also O'Sullivan v. Boerckel,* 526 U.S. 838, 848 (1999) ("a prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort" has not properly exhausted the claims for purposes of 28 U.S.C. § 2254(b)(1); the habeas petitioner's failure to present her "claims to the

Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims"); *Hough v. Anderson,* 272 F.3d 878, 892-93 (7th Cir. 2001) (petitioner's failure to present issue to Indiana Supreme Court constituted procedural default).

"[H]abeas corpus has its own peculiar set of hurdles a petitioner must clear before his claim is properly presented to the district court." *Keeney v. Tamayo-Reyes,* 504 U.S. 1, 14 (1992) (O'Connor, J., dissenting) (internal citations omitted). As to the claim that his attorney was ineffective for failing to deliver a plea agreement to him, Halliburton has encountered the doctrine of procedural default and has not shown the existence of circumstances permitting him to overcome that default.

Halliburton's third claim is that it was fundamental error for the trial court "to admit into evidence 27 gruesome photographs some of which were taken post-autopsy, and a jar containing the victim's rib bone." Halliburton also contends that the trial court "improperly allowed to [sic] the State to present evidence to the jury that Halliburton had previously committed burglary and not only did the trial court allow the state to present inadmissible evidence of the prior burglary, the trial court's limiting instruction to the jury regarding the evidence was improper." These two claims, however, implicate only issues of state law and hence are not cognizable in this proceeding. *See Perruquet v. Briley,* 390 F.3d 505, 511 (7th Cir. 2004) ("To say that a petitioner's claim is not cognizable on habeas review is thus another way of saying that his claim 'presents no federal issue at all.'") (quoting *Bates v. McCaughtry,* 934 F.2d 99, 101 (7th Cir. 1991)); *Morgan v. Krenke*, 232 F.3d 562 (7th Cir. 2000) (a federal habeas courts may only review a state evidentiary ruling if it is erroneous and is of a constitutional magnitude, *i.e.,* the state court's ruling must be so prejudicial as to compromise the habeas petitioner's due process right to a fundamentally fair trial creating the

likelihood that an innocent person was convicted). A viable habeas claim pursuant to § 2254(a) necessarily precludes a claim that is not based on alleged noncompliance with federal law. *See Wilson v. Corcoran*, 131 S. Ct. 13, 16 (2010); *Perruquet v. Briley,* 390 F.3d 505, 511 (7th Cir. 2004) ("To say that a petitioner's claim is not cognizable on habeas review is thus another way of saying that his claim 'presents no federal issue at all.'") (quoting *Bates v. McCaughtry,* 934 F.2d 99, 101 (7th Cir. 1991)). The principles just recited mean that an asserted violation of state law does not present a viable or cognizable claim for relief pursuant to § 2254(a). Halliburton is therefore not entitled to relief based on the asserted violations of Indiana law. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions"). The evidentiary rulings which are challenged did not implicate Halliburton's right to a fair trial.

Halliburton's final claim is that the "admission of testimony vouching for the credibility of another witness constituted fundamental error." The failure to properly preserve this claim for inclusion in this proceeding constitutes procedural default. *See Willis v. Aiken*, 8 F.3d 556, 561 (7th Cir. 1993). Halliburton has not shown the existence of circumstances permitting him to overcome the consequences of his procedural default.

Apart from the question of procedural default, the claim of improper vouching lacks merit. "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony." *United States v. Weatherspoon,* 410 F.3d 1142, 1146 (9th Cir. 2005) (citation omitted). "Improper vouching for witnesses is not considered to impact an express constitutional right." *United States v. Harlow,* 444 F.3d 1255, 1266 (10th Cir. 2006) (citation

omitted). Like other forms of prosecutorial misconduct, vouching can compromise the fairness of the proceedings and implicate the Fourteenth Amendment's Due Process Clause. For this inquiry, the Supreme Court articulated the test in *Lisenba v. California,* 314 U.S. 219 (1941):

> As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.

*Id.* at 236. The Indiana Court of Appeals reviewed the various testimony and concluded: "Next Halliburton complains of error in the introduction of testimony from state's witness Cynthia Bollenbaugh—DeFronzo's mother . . . . Nowhere in the record does Bollenbaugh claim DeFronzo's testimony was truthful or even that the testimony DeFronzo offered at trial was even consistent with what Bollenbaugh had previously been told. In fact, with the agreement of the parties, the trial court permitted the State to lead the witness during that portion of the examination undoubtedly to ensure that Bollenbaugh did not proffer hearsay statements from her conversation with DeFronzo or any otherwise inadmissible testimony. . . . On this issue we find no error, fundamental or otherwise." *Halliburton v. State,* 1 N.E.3d 670, 679-80 (Ind. 2013). This was a reasonable application of the federal standard noted above.

### D. Conclusion

Halliburton's conviction withstood challenge in the Indiana courts, and thus a presumption of constitutional regularity attaches to it. *See Farmer v. Litscher,* 303 F.3d 840, 845 (7th Cir. 2002) (citing *Parke v. Raley,* 506 U.S. 20, 29-30 (1992)). This Court has carefully reviewed the state record in light of Halliburton's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. The requirements of AEDPA

reflect "the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington,* 562 U.S. at 102–03 (quoting *Jackson v. Virginia,* 443 U.S. 307, 332 n.5 (1979)). *See also O'Quinn v. Spiller*, 806 F.3d 974, 977 (7th Cir. 2015) ("We ask only whether the [state court's] decision was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of facts in light of the evidence presented in the State court proceeding.'") (quoting 28 U.S.C. § 2254(d)(1), (2)). "A defendant whose position depends on anything other than a straightforward application of established rules cannot obtain a writ of habeas corpus." *Liegakos v. Cooke,* 106 F.3d 1381, 1388 (7th Cir. 1997). No such established rules entitle Halliburton to relief in this case. His petition for a writ of habeas corpus is therefore **denied.** Judgment consistent with this Entry shall now issue.

## II.  Certificate of Appealability

Pursuant to Federal Rule of Appellate Procedure 22(b), Rule 11(a) of the *Rules Governing § 2254 Proceedings*, and 28 U.S.C. § 2253(c), the Court finds that Halliburton has failed to show that reasonable jurists would find "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). The Court therefore **denies** a certificate of appealability.

IT IS SO ORDERED.

Date: __08/07/2017_____

Distribution attached.

_____
LARRY J. McKINNEY, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Kelly A. Loy
OFFICE OF THE INDIANA ATTORNEY GENERAL
kelly.loy@atg.in.gov

TYRICE J. HALLIBURTON
128713
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only